# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| EUGENII GLUSHCHENKO, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-21-CV-00174-FM |
| | § | |
| UNITED STATES DEPARTMENT OF | § | |
| HOMELAND SECURITY; | § | |
| ALEJANDRO MAYORKAS, Secretary | § | |
| of the United States Department of | § | |
| Homeland Security; TAE JOHNSON, | § | |
| Director of United States Immigration | § | |
| and Customs Enforcement; COREY | § | |
| PRICE, Executive Associate Director for | § | |
| Enforcement and Removal Operations; | § | |
| JUAN ACOSTA, El Paso Field Office | § | |
| Director, Office of Detention and | § | |
| Removal, | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO DISMISS AND GRANTING SUMMARY JUDGMENT</u>

On this day, the court considered the "Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory Relief and Motion for Immediate Rule to Show Cause Hearing" [ECF No. 1] ("Petition") filed on August 2, 2021 by Eugenii Glushchenko ("Petitioner"); "Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [ECF No. 11] ("Motion"), filed on August 10, 2021 by Juan Acosta, Tae Johnson, Alejandro Mayorkas, Corey Price, and the United States Department of Homeland Security ("Respondents"); and "Petitioner's Response to Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [ECF No. 12] ("Response"), filed on September 24, 2021.

For the following reasons, the court will **DENY IN PART** and **GRANT IN PART** Respondents' motion.

I.     <u>BACKGROUND</u>

    *A.*     *Factual Background*

Petitioner is a 38-year-old native of Russia.[1] Petitioner's wife, Ekaterina Azarova, and minor child both reside in Maricopa County, Arizona.[2] Petitioner alleges he is in poor health and suffers from numerous ailments.[3] On August 19, 2019, Petitioner was removed to Russia pursuant to a final order of deportation after entering the United States unlawfully.[4]

On November 14, 2019, Petitioner again unlawfully entered the United States near Lukeville, Arizona, and was re-arrested by United States Border Patrol ("USBP").[5] Petitioner alleges he was shot in his upper thigh while crossing the United States border by USBP,[6] and Respondents allege Petitioner resisted arrest with violence.[7] After his arrest, Petitioner was referred for federal prosecution for illegal re-entry and assault on a federal officer.[8] USBP then

---

[1] "Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory Relief and Motion for Immediate Rule to Show Cause Hearing" ("Habeas Pet.") 3 ¶ 14, ECF No. 1, filed Aug. 2, 2021.

[2] Habeas Pet. at 4 ¶ 18.

[3] Habeas Pet. at 4 ¶ 20.

[4] "Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" ("Govt. Mot.") 2 ¶ 3, ECF No. 11, filed Aug. 10, 2021.

[5] Habeas Pet. at. 3 ¶ 15; Govt. Mot. at 2 ¶ 2.

[6] Habeas Pet. at 4 ¶ 20.

[7] Govt. Mot. at 2 ¶ 2.

[8] Govt. Mot. at 2 ¶ 4.

reinstated Petitioner's prior removal order pursuant to 8 U.S.C. § 241(a)(5) on November 21, 2019.[9]

On February 12, 2020, a United States District Court Judge in Arizona ordered Petitioner released from criminal custody under certain conditions and upon posting a $2,000 bond.[10]  Once Petitioner's bond was paid, United States Marshals Service officials released Petitioner to the custody of Immigration and Customs Enforcement's ("ICE") Enforcement and Removal Office ("ERO").[11]  Petitioner has remained in ICE custody since April 10, 2020.[12]  Ultimately, the charge of assault on a federal officer was dismissed, and Petitioner assented to a plea agreement for the charge of illegal re-entry.[13]  On June 29, 2021, Petitioner was sentenced to "time served."[14]

Respondents allege that although Petitioner complied with removal efforts on a few occasions, Petitioner has, for the most part, obstructed his removal to Russia.  On April 27, 2020 and May 13, 2020, Petitioner refused to fill out or sign a Russian Travel Document application and was served with a Warning for Failure to Depart ("Form I-229") after each incident.[15]  On May 15, 2020 Petitioner filled out the Russian Travel Document application, and it was forwarded to the Russian Consulate in Houston, Texas.[16]  However, on May 26, 2020, the

---

[9] *Id.*

[10] Habeas Pet. at 4 ¶ 16; Govt. Mot. at 2 ¶ 5.

[11] Habeas Pet. at 4 ¶ 16 ; Govt. Mot. at 2 ¶ 6.

[12] *Id.*

[13] Govt. Mot. at 7 ¶ 41.

[14] Habeas Pet. at 4 ¶ 17; Govt. Mot. at 8 ¶ 50.

[15] Govt. Mot. at 2–3 ¶¶ 8–9.

[16] Govt. Mot. at 3 ¶ 10.

government attempted to have Petitioner fill out additional information for the Russian Travel Document application as per the request of the Russian Consulate, but he refused and was served with another Form I-229.[17]  Petitioner finally filled out the Russian Travel Document application with the additional information requested by the Russian Consulate on May 29, 2020.[18]

On July 8, 2020, when Petitioner was in ICE custody for approximately 90 days, Petitioner was served with a 90–day Post Order Custody Review ("POCR") decision made by the El Paso Field Office.[19]  The officials determined Petitioner should remain in ICE custody pending removal.[20]  Thereafter, the government continued to make efforts to remove Petitioner. On October 21, Petitioner was served with a 180–day POCR decision made by the Head Quarters Removals and International Operations ("HQ-RIO"), where they also determined that Petitioner should remain detained.[21]

On December 1, 2020, Russian Consular Officials interviewed Petitioner, but he again refused to sign the travel document issued by their office.[22]  The Russian Consulate advised the government that they could not issue a travel document without Petitioner's signature.[23] Subsequently, Petitioner's scheduled ICE Air Operations charter removal flight to Russia was

---

[17] Govt. Mot. at 3 ¶ 11.

[18] Govt. Mot. at 3 ¶ 14.

[19] Govt. Mot. at 4 ¶ 17.

[20] *Id.*

[21] Govt. Mot. at 5 ¶ 24.

[22] Govt. Mot. at 5 ¶ 26.

[23] *Id.*

canceled.[24]  Due to these incidents, ERO El Paso served Petitioner with a Notice of Failure to Comply pursuant to 8 C.F.R. § 241.4(g) and a Form I-229 on February 23, 2021.[25]

On March 4, 2021, ERO El Paso was advised that the Russian Consulate requested a telephonic interview with Petitioner.[26]  ERO El Paso facilitated the telephonic interview between the Russian Consulate and Petitioner, but Petitioner refused to cooperate and repeatedly walked away from officers while the Russian Consulate was on speakerphone.[27]  In light of the unsuccessful telephonic interview, ERO El Paso requested assistance from HQ-RIO to coordinate an in-person interview between Petitioner and the Russian Consulate.[28]

On April 7, 2021, the government received a letter from the Counselor-Minister from the Embassy of the Russian Federation stating that according to Russian legislation, an individual can only obtain a travel document by signing the travel document application in person and in the presence of the consul.[29]  Additionally, the Russian Federation advised they would only issue travel documents for those individuals who have had their citizenship confirmed and voluntarily wished to return to Russia.[30]

On April 22, 2021, ERO El Paso renewed efforts to schedule a telephonic interview with Petitioner and the Russian Consulate.[31]  Thereafter, the Russian Consulate advised the

---

[24] *Id.*

[25] Govt. Mot. at 6 ¶ 33.

[26] Govt. Mot. at 6 ¶ 34.

[27] Govt. Mot. at 6 ¶ 35.

[28] Govt. Mot. at 6 ¶ 37.

[29] Govt. Mot. at 6–7 ¶ 39.

[30] Govt. Mot. at 7 ¶ 42.

[31] Govt. Mot. at 7 ¶ 43.

government that it was essential for Petitioner to be prepared and cooperative during his interview.[32]  On May 11, 2021 ERO Miami was informed that the Russian Consulate had requested an in-person interview with Petitioner.[33]

On August 2, 2021, Petitioner filed a writ of habeas corpus challenging his prolonged detention.  To date, Petitioner has been in ICE custody for over 17 months.

B.    *Parties' Arguments*

1.    Petitioner's Arguments

Petitioner's writ of habeas corpus pursuant to 28 U.S.C. § 2241 raises three grounds for relief.  Two of these arise under *Zadvydas*, although one is presented as a statutory violation of 8 U.S.C. § 1231 and the other as a violation of Petitioner's right to substantive due process under the Fifth Amendment to the United States Constitution.[34]  Petitioner's third ground alleges the denial of a neutral and impartial decision-maker to review his continued custody violates his right to procedural due process under the Fifth Amendment to the United States Constitution.

2.    Respondents' Arguments

Respondents filed a Federal Rule of Civil Procedure ("FRCP") 12(b)(1) motion to dismiss, and in the alternative, a FCRP 56 motion for summary judgment.  First, Respondents argue this court lacks subject-matter jurisdiction to review the discretionary decision of the Attorney General to detain Petitioner pending removal and, therefore, Petitioner's claims should be dismissed according to FRCP 12(b)(1).  In the alternative, Respondents argue they are entitled

---

[32] Govt. Mot. at 7 ¶ 45.

[33] Govt. Mot. at 8 ¶ 47.

[34] *Zadvydas v. Davis*, 533 U.S. 678 (2001).

to summary judgment under FRPC 56 since Petitioner cannot assert a viable claim under *Zadvydas* where ICE is holding an alien longer than the 90–day removal period under the exception in 8 U.S.C. § 1231(a)(1)(C).[35]

## II.  **APPLICABLE LAW**

### A.  *Motion to Dismiss under FRCP Rule 12(b)(1)*

A motion to dismiss pursuant to FRCP 12(b)(1) challenges a federal court's subject-matter jurisdiction.[36]  "Federal courts are courts of limited jurisdiction" and, therefore, have the power to adjudicate claims only when jurisdiction is conferred by statute or the Constitution.[37] "A case is properly dismissed, for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case."[38]

While the burden of proof falls on the plaintiff to show that jurisdiction does exist, "[u]ltimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle [the] plaintiff to relief."[39]  A district court may base its determination on: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or

---

[35] *Id.*

[36] FED.R.CIV.P. 12(b)(1).

[37] *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).

[38] *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

[39] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

(3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[40]

### B. Summary Judgment under FRCP Rule 56

Summary judgment under FRCP 56 is proper where the pleadings, discovery, and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[41] A dispute over a material fact is genuine "when there is evidence sufficient for a rational trier of fact to find for the non-moving party."[42] Substantive law defines which facts are material.[43]

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits demonstrating the absence of a genuine issue of material fact.[44] When considering only admissible evidence in the pretrial record,[45] the court will "view all facts in the light most favorable to the non-moving party" and draw all factual inferences in the nonmovant's favor.[46] If the moving party cannot demonstrate the absence of a genuine issue of material fact, summary judgment is inappropriate.[47]

Once the moving party has met its initial burden, the non-moving party must go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is

---

[40] *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010) (citations and quotations omitted).

[41] FED. R. CIV. P. 56(a).

[42] *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 323 (5th Cir. 2002) (citation omitted).

[43] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[44] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[45] *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

[46] *Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 582 (5th Cir. 2006) (per curiam) (citation omitted).

[47] *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995).

a genuine issue for trial.[48]  The non-moving party's burden is not satisfied by the raising of

"some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence."[49]  The court does not "in the absence of any proof

assume that the non[-]moving party could or would prove the necessary facts."[50]  When

reviewing the parties' submissions, the court does not weigh the evidence or determine the

credibility of the witnesses."[51]  Once the nonmovant has had the opportunity to make this

showing, summary judgment will be granted "if no reasonable juror could find for the

nonmovant."[52]

## III.  DISCUSSION

   A.    *The Court Has Proper Jurisdiction to Adjudicate Petitioner's Claims*

   Before the court addresses the merits of the Petition, it will first examine whether it has

subject-matter jurisdiction to adjudicate the claims therein.  Respondents move to dismiss the

Petition under FRCP 12(b)(1) for lack of subject-matter jurisdiction on the ground that Petitioner

seeks review of a discretionary decision by the Attorney General.  District courts are stripped of

jurisdiction to examine such discretionary decisions.[53]  Petitioner argues the court has

jurisdiction as he is merely challenging the statutory and constitutional basis of his detention, not

---

[48] *Celotex*, 477 U.S. at 324 (internal quotation marks and citation omitted).

[49] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam) (internal quotation marks and citations omitted).

[50] *Id.* at 1075 (emphasis removed).

[51] *Caboni v. General Motors Corp.*, 278 F.3d 448, 451 (5th Cir. 2002) (citation omitted).

[52] *Id.*

[53] *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

a discretionary decision by the Attorney General. For the following reasons, the court finds that it has jurisdiction over all of Petitioner's claims.

Petitioner brings this action pursuant to 28 U.S.C. § 2241, which authorizes district courts to grant a writ of habeas corpus when a petitioner "in custody under or by color of the authority of the United States ... in violation of the Constitution or laws or treaties of the United States."[54] Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest."[55] "The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom."[56]

Although this court has jurisdiction to decide statutory and constitutional challenges to civil immigration detention, it does not have jurisdiction to review the discretionary decisions of the Attorney General.[57] 8 U.S.C. § 1252(a)(2)(B)(ii) provides: "Notwithstanding any other provision of law (statutory or nonstatutory) … no court shall have jurisdiction to review … any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security."

---

[54] 28 U.S.C. §§ 2241(c)(1), (3).

[55] *INS v. St. Cyr*, 533 U.S. 289, 301 (2001).

[56] *Boumediene v. Bush*, 553 U.S. 723, 739 (2008).

[57] 8 U.S.C. § 1252(a)(2)(B)(ii). *See Maldonado v. Macias*, 150 F. Supp. 3d 788, 794 (W.D. Tex. 2015) ("[D]istrict courts retain the power to hear statutory and constitutional challenges to civil immigration detention under § 2241[.]"). Additionally, the REAL ID Act divests federal courts of jurisdiction to consider challenges to removal orders, however, the REAL ID Act is not at issue in this case. *See* 8 U.S.C. § 1252(a)(5).

However, federal courts have rejected application of the jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) in certain circumstances.[58]  For example, the Supreme Court recognized a distinction between challenges to individual, discretionary detention decisions—which are prohibited—and challenges to the extent of the Attorney General's authority—which remain cognizable.[59]  Likewise, challenges to the statutory framework governing immigration detention,[60] regulations promulgated under the Immigration and Nationality Act,[61] and constitutional claims, such as claims that the discretionary process itself was constitutionally flawed,[62] have been held to be exempt from § 1252(a)(2)(B)(ii).

---

[58] In fact, the Fifth Circuit has concluded that this provision is relatively narrow.  *See Zhao v. Gonzales*, 404 F.3d 295, 303 (5th Cir. 2005) ("One might mistakenly read § 1252(a)(2)(B)(ii) as stripping us of the authority to review any discretionary immigration decision.  That reading, however, is incorrect, because § 1252(a)(2)(B)(ii) strips us only of jurisdiction to review discretionary authority specified in the statute.  The statutory language is uncharacteristically pellucid on this score; it does not allude generally to 'discretionary authority' or to 'discretionary authority exercised under this statute,' but specifically to 'authority for which is specified under this subchapter to be in the discretion of the Attorney General.'").

[59] *Jennings v. Rodriguez*, —— U.S. ——, 138 S.Ct. 830, 841, 200 L.Ed.2d 122 (2018) ("First and foremost, they are challenging the extent of the Government's detention authority under the 'statutory framework' as a whole."); *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) ("The aliens here ... challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion.").  *See Gutierrez-Soto v. Sessions*, 317 F. Supp. 3d 917, 925 (W.D. Tex. 2017) ("[C]ourts have balked at applying the jurisdiction-stripping provision of Sections 1226(e) and 1252[(a)(2)](B)(ii) in cases where habeas petitions assert constitutional claims challenging the extent of the Attorney General's authority, rather than his discretionary decisions.").

[60] *Jennings*, 138 S.Ct. at 841 (alien permitted to allege "challenges [to] the statutory framework that permits [the alien's] detention without bail"); *Kambo v. Poppell*, No. SA-07-CV-800-XR, 2007 WL 3051601, at *8 (W.D. Tex. Oct. 18, 2007) ("[D]etained aliens may bring habeas corpus challenges to the constitutionality of the statutory framework that permits their detention … under the detention statute.").

[61] *Ayanbadejo v. Chertoff*, 517 F.3d 273, 278 (5th Cir. 2008) ("Categorizing I–130 petition determinations as discretionary based on authority found in an implementing *regulation* would contradict the plain statutory language of § 1252(a)(2)(B)(ii), which specifies that courts are only stripped of authority to review decisions designated as discretionary by the *statute*.").

[62] *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[A]lthough the Attorney General's 'discretionary judgment ... shall not be subject to review,' claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241.'") (internal citations omitted); *Sierra v. INS*, 258 F.3d 1213, 1217 (10th Cir. 2001) (holding that § 1252(a)(2)(B)(ii) did not bar challenge to the constitutionality of the procedures used in alien's parole proceeding as it is never within the Attorney General's discretion to act unconstitutionally); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 135 (D.D.C. 2018) ("While § 1252(a)(2)(B)(ii) undoubtedly bars judicial review of individual parole decisions, courts have

Petitioner initially makes two related claims: first, that his continued detention by ICE is unlawful and contravenes 8 U.S.C. § 1231(a)(6), and second, his continued detention by ICE violates his right to substantive due process under the Fifth Amendment to the United States Constitution as interpreted by *Zadvydas*. Respondents argue Petitioner seeks review of the discretionary decision by the Attorney General to keep Petitioner detained pending removal. However, the Supreme Court made explicitly clear that "§ 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."[63] Indeed, the Court recognized that § 1231 "contain[s] an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."[64] A challenge to this limitation is a focus of Petitioner's first two claims. Consequently, the court has proper jurisdiction over these claims.

Lastly, Petitioner argues that the denial of a neutral decision-maker to review his continued custody violates his right to procedural due process under the Fifth Amendment to the United States Constitution. Respondents again contend that Petitioner seeks review of a discretionary decision by the Attorney General to detain him. However, Petitioner does not seek an assessment of whether the decision to keep Petitioner in custody pending removal is meritorious. Rather, Petitioner challenges the constitutionality of the statutory framework of 8 U.S.C. § 1231.[65] As such, the court has jurisdiction over Petitioner's due process claim.

---

declined to apply it to claims challenging the legality of policies and processes governing discretionary decisions under the INA.").

[63] *Zadvydas*, 533 U.S. at 688.

[64] *Id.* at 682.

[65] *See, e.g., Martinez v. LaRose*, 968 F.3d 555, 565 (6th Cir. 2020) ("As a final matter, it seems necessary to address whether due process requires a bond hearing after a certain amount of time in detention [under § 1231(a)]."); *Guerrero-Sanchez v. Warden York County Prison*, 905 F.3d 208, 226 (3d Cir. 2018) ("We therefore adopt a six-month rule here–that is, an alien detained under § 1231(a)(6) is generally entitled to a bond hearing after

Since Petitioner's claims are based upon cognizable statutory and constitutional violations, this court may exercise jurisdiction over his Petition. Consequently, Respondents' FRCP 12(b)(1) motion to dismiss is denied.

      B.     *Petitioner is Not in Custody in Violation of the Immigration and Nationality Act nor His Substantive Due Process Rights Pursuant to Zadvydas*

      1.    <u>Statutory Framework</u>

The Immigration and Nationality Act establishes procedures for removing aliens living unlawfully in the United States.[66] The statutory provision that governs the court's review in this case is 8 U.S.C. § 1231, which applies once an alien is ordered removed. Under § 1231(a)(1)(A), when an alien is ordered removed, the Department of Homeland Security ("DHS") must physically remove the alien from the United States within a 90–day "removal period."[67] Subsection (5) of § 1231(a) also allows the reinstatement of a prior order of removal, which is not subject to reopening or review once reinstated.[68] The removal period begins on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement.[69] During the 90–day removal period, detention is mandatory.[70]

---

six months (i.e., 180 days) of custody."); *Diouf v. Napolitano*, 634 F.3d 1081, 1092 (9th Cir. 2011) ("[A]liens [detained under § 1231(a)] who are denied release in their 180-day reviews must be afforded the opportunity to challenge their continued detention in a hearing before an immigration judge.").

    [66] *Johnson v. Guzman Chavez*, —— U.S. ——, 141 S.Ct. 2271, 2281, 210 L.Ed.2d 656 (2021).

    [67] 8 U.S.C. § 1231(a)(1)(A); *Guzman Chavez*, 141 S.Ct. at 2280 n.1 ("Although many of the provisions at issue in this case refer to the Attorney General, Congress has also empowered the Secretary of Homeland Security to enforce the Immigration and Nationality Act.").

    [68] 8 U.S.C. § 1231(a)(5).

    [69] 8 U.S.C. § 1231(a)(1)(B).

    [70] 8 U.S.C. § 1231(a)(2).

Under § 1231, the removal period may be extended in at least three circumstances, such that an alien remains detained after 90 days have passed.[71]  First, the removal period may be extended if the alien fails to make a timely application for travel documents or acts to prevent his removal.[72]  Second, DHS may stay the immediate removal of certain aliens if it decides that such removal is not practicable or proper, or if the alien is needed to testify in a pending prosecution.[73]  And finally, the statute provides that an alien may be detained beyond the removal period or released under supervision if he is (1) inadmissible, (2) removable as a result of violations of status requirements, entry conditions, or the criminal law, or for national security or foreign policy reasons, or (3) a risk to the community or unlikely to comply with the removal order.[74]

Although the statute does not specify a time limit on how long DHS may detain an alien past the 90–day removal period, the Supreme Court in *Zadvydas* "read an implicit limitation" into § 1231(a)(6) of the statute "in light of the Constitution's demands," and held that an alien may be detained only for "a period reasonably necessary to bring about that alien's removal from the United States."[75]  That period is presumptively six months.[76]  After six months, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release the

---

[71] *Guzman Chavez*, 141 S.Ct. at 2280.

[72] 8 U.S.C. § 1231(a)(1)(C).

[73] 8 U.S.C. § 1231(c)(2)(A).

[74] 8 U.S.C. § 1231(a)(6).

[75] *Guzman Chavez*, 141 S.Ct. at 2281 (citing *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001)).

[76] *Id*. (citing *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001)).

alien.[77]  If no exception applies, an alien not removed within the 90–day removal period will be released subject to supervision.[78]

### 2. 8 U.S.C. § 1231(a)(1)(C) and *Zadvydas*

As a preliminary matter, the court must decide if extended detention justified by an alien's failure to cooperate with removal efforts prescribed in § 1231(a)(1)(C) precludes the court from analyzing the alien's prolonged detention under *Zadvydas'* burden-shifting framework.  Respondents argue *Zadvydas* is not instructive as Petitioner has failed to cooperate fully in his removal.[79]

There has been understandable confusion and considerable inconsistencies in the application of *Zadvydas* in instances where the government contends its prolonged detention of an alien is justified by § 1231(a)(1)(C) rather than, or in conjunction with, § 1231(a)(6).[80]  Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future.[81]  Other

---

[77] *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001).

[78] *See* 8 U.S.C. § 1231(a)(3).

[79] The court notes Respondents do not cite to a single Fifth Circuit opinion to support their position.

[80] *See Anadji v. Keisler*, No. B–07–184, 2008 WL 11388565, at *5 (S.D. Tex. June 26, 2008), report and recommendation adopted, No. B–07–184, 2008 WL 11388548 (S.D. Tex. July 15, 2018) ("Some courts have found that an alien's failure to cooperate with removal efforts makes it impossible for an alien to show 'good reason' as required by *Zadvydas* for relief.  Other courts look at § 1231(a)(1)(C) as a separate analysis from the *Zadvydas* burden-shifting test.").

[81] *See Sanni-Shittu v. Lynch*, 623 F. App'x 279 (5th Cir. 2015) ("The record establishes that Sanni–Shittu conspired or acted to prevent his removal … Sanni–Shittu also has failed to show that, under the circumstances, his continued detention violates his constitutional rights or that 'there is no significant likelihood of removal in the reasonably foreseeable future.'"); *Roach v. Holder*, 344 Fed. Appx. 945, 946 (5th Cir. 2009) ("[T]he magistrate judge found that by his repeated filings with the BIA, Roach prevented U.S. Immigration and Customs Enforcement from obtaining Roach's travel documents for removal.  This interference extended his removal period and detention under 8 U.S.C. § 1231(a)(1)(C) … We conclude that Roach failed to meet his initial burden of proof in showing there is no significant likelihood of removal in the reasonably foreseeable future."); *Blankson v. Mukasey*, 261 Fed.Appx. 758, 759 (5th Cir. 2008) ("Blankson's frequently changing claims of citizenship hampered the DHS's

courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether.[82]  Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period.[83]  In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.[84]

By its terms, § 1231(a)(1)(C) authorizes extended detention of an alien "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the

---

ability to effectuate removal and, under § 1231(a)(1)(C), has served to extend the removal period of § 1231(a)(1)(A).  Blankson has failed to show that under the circumstances his continued detention violates his constitutional rights and that "there is no significant likelihood of removal in the reasonably foreseeable future.") (internal citations omitted).  *See, e.g., Ali v. Gomez*, No. SA-11-CA-726-FB, 2012 WL 13136445 (W.D. Tex. Mar. 14, 2012); *Cap Soo v. Holder*, No. H–11–00350, 2011 WL 2461966 (S.D. Tex. June 17, 2011); *Babanov v. Velasco*, No. 1:09-51, 2010 WL 11646530 (S.D. Tex. June 22, 2010); *Bokhetache v. Gonzales*, No. 1:07-CV-744, 2010 WL 817054 (E.D. Tex. Mar. 4, 210); *Brown v. Bureau of Immigration & Customs Enf't*, No. B–08–01, 2008 WL 11389140 (S.D. Tex. June 9, 2008), report and recommendation adopted, 2008 WL 11389139 (S.D. Tex. July 7, 2008); *Canhigh v. Bureau of Immigration & Customs Enf't*, No. B-07-209, 2008 WL 11394315 (S.D. Tex. June 9, 2008), report and recommendation adopted, 2008 WL 11394269 (S.D. Tex. July 8, 2008); *Dumpeh v. Moore*, No. SA-07-CA-294-OG, 2007 WL 3235099 (W.D. Tex. Oct. 26, 2007).

[82] *See, e.g., Kirabira v. Mukasey*, No. 3:08-CV-0921-M, 2008 WL 4945642, at *2 (N.D. Tex. Nov. 18, 2008) ("Insofar as Petitioner seeks release under *Zadvydas*, his claim is moot.  Respondents are detaining Petitioner under 8 U.S.C. § 1231(a)(1)(C), not 8 U.S.C. § 1231(a)(6) which was at issue in *Zadvydas*."); *Davis v. Gonzales*, 482 F. Supp. 2d 796, 801 (W.D. Tex. 2006) ("Assuming that an alien meets the good faith requirement imposed by § 1231, habeas courts must then examine the length of the alien's detention."); *Liu v. Chertoff*, No. EP-06-CA-0203-DB, 2006 WL 4511941, at *3 (W.D. Tex. Oct. 23, 2006) ("The second subsection, § 1231(a)(6), was construed by the United States Supreme Court in *Zadvydas*.  Section 1231(a)(6) governs post-removal detentions and cannot be used to indefinitely detain an alien.  The Court is of the opinion that the instant facts are distinguishable from *Zadvydas* and thus, § 1231(a)(1)(C) controls Liu's continued detention.") (internal citations omitted).  Many courts point to the 9th Circuit opinion in *Pelich* to support this proposition.  However, the 9th Circuit made explicitly clear to note: "We pause for a moment to stress that we expressly decline to *endorse* or *reject* any inferred *Zadvydas*-inspired limitation to § 1231(a)(1)(C)." *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) (emphasis added).  In fact, the 9th Circuit went on to state, "[w]ith that reservation, we agree that a petitioner who impedes INS removal efforts 'has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future[,]'" in effect applying *Zadvydas* to a case where an alien has obstructed the removal process under 8 U.S.C. § 1231(a)(1)(C).  *Id.*

[83] *See, e.g., Balogun v. I.N.S.*, 9 F.3d 347, 349–51 (5th Cir. 1993); *Olowu v. Kelly*, No. SA-17-CA-00469-JWP, 2017 WL 8181530, at *2 (W.D. Tex. Sept. 1, 2017); *Lightson v. Mukasey*, No. H–07–2236, 2008 WL 8053472, at *2 (S.D. Tex. Mar. 6, 2008).

[84] *See, e.g., Hernandez–Esquivel v. Castro*, No. 5–17–CV–0564–RBF, 2018 WL 3097029, at *5–6 (W.D. Tex. June 22, 2018); *Lawal v. Lynch*, 156 F. Supp. 3d 846, 854–55 (S.D. Tex. 2016).

alien's departure[.]" The confusion lies in the fact that the Supreme Court in *Zadvydas* interpreted § 1231(a)(6) specifically. § 1231(a)(6) states: "An alien ordered removed who is inadmissible under section 1182 of this title, removable under section 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)."

In *Zadvydas*, the Supreme Court found that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem."[85] The Court noted that confinement under § 1231(a)(6) was "not limited, but potentially permanent."[86] Thus, to avoid a "serious constitutional threat[,]" the Court construed § 1231(a)(6) to "limit[ ] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" in order to comport with due process.[87] "[F]or the sake of uniform administration in the federal courts" the Supreme Court recognized a six-month "presumptively reasonable period of detention."[88]

The plain text of § 1231(a)(1)(C) poses a similar constitutional issue as § 1231(a)(6).[89] Civil confinement under § 1231(a)(1)(C) can be reasonably read to be indefinite. Moreover, the justifications for long-term detention under § 1231(a)(1)(C) and § 1231(a)(6) are strikingly

---

[85] *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001).

[86] *Id*. at 691.

[87] *Id*. at 689-90.

[88] *Id*. at 700–01.

[89] *See Pelich v. INS*, 329 F.3d 1057, 1060 ("In *Lema v. I.N.S.* … the court acknowledged a possible 'constitutional limit to the amount of time an alien can be detained under [§ 1231(a)(1)(C)],' [and] it elected not to address that issue.") (internal citation omitted).

similar. Both sections authorize prolonged detention of an alien due to the alien's obstruction of the removal process.[90]

Zadvydas makes clear that a court must "first ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided."[91] Saving constructions are "a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts."[92] To avoid a similar constitutional question posed by § 1231(a)(6), this court reads the statute's text in § 1231(a)(1)(C) with its surrounding provisions. Therefore, the court follows the trend of other federal courts in interpreting non-compliance with the removal process under § 1231(a)(1)(C) as instructive in determining whether the alien can show "good cause" under Zadvydas' burden-shifting framework.[93] Indeed, as other courts have noted, an alien will likely have difficulty showing "good cause" where the alien's actions obstruct the removal process.[94] Furthermore, an absurd outcome would result if an alien deemed a "risk to the community" under § 1231(a)(6) is afforded more constitutional protection than one

---

[90] *Compare* 8 U.S.C. § 1231(a)(1)(C) ("The removal period shall be extended … if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal."), *with* 8 U.S.C. § 1231(a)(6) ("An alien … who has been determined by the Attorney General [as]… unlikely to comply with the order of removal, may be detained beyond the removal period[.]").

[91] *Zadvydas*, 533 U.S. at 689.

[92] *Clark v. Martinez*, 543 U.S. 371, 381 (2008).

[93] *See supra* footnote 81.

[94] *See Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003) ("[A] petitioner who impedes INS removal efforts 'has not met his burden of showing that there is no significant likelihood of removal in the reasonably foreseeable future.'"); *Canhigh v. Bureau of Immigration & Customs Enf't*, 07-CV-209, 2008 WL 11394315, at *4 (S.D. Tex. June 9, 2008), report and recommendation adopted, 2008 WL 11394269 (S.D. Tex. July 8, 2008) ("Canhigh cannot show 'good reason' to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The present obstacle to the receipt of travel documents for Canhigh's removal is his own failure to comply with ICE's efforts and provide proper identity information.").

who may have merely refused to sign a travel document and is deemed non-compliant under § 1231(a)(1)(C).  Lastly, the court finds the use of equitable tolling to be misguided.[95]

"[I]f Congress had meant to authorize long-term detention of unremovable aliens, it certainly could have spoken in clearer terms."[96]  Thus, Petitioner's claims will be examined under *Zadvydas'* burden-shifting framework.

### 3.    Burden-Shifting under *Zadvydas*

The 90–day removal period is triggered on the latest of three dates: (1) the date the order of removal becomes "administratively final," (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the alien is released from non-immigration detention or confinement.[97]  Petitioner's final order of removal was reinstated on November 21, 2019.  However, Petitioner remained in non-immigration detention until April 10, 2020, where he was released to ICE custody the same day.[98]  Therefore, Petitioner's removal period began on April 10, 2020.

After Petitioner's removal period began, Petitioner was served with a timely 90–day POCR on July 8, 2020, and a minorly delayed 180–day POCR on October 21, 2020, both of which determined Petitioner should remain in ICE custody.  To date, Petitioner has remained in ICE custody for over 17 months.  Accordingly, *Zadvydas'* burden-shifting framework is

---

[95] *See Babanov v. Velasco*, No. 1:09-51, 2010 WL 11646530, at *6 (S.D. Tex. June 22, 2010) ("Nonetheless, a number of unreported Fifth Circuit cases have relied on the following language from *Balogun v. I.N.S.* (5th Cir. 1993): 'if it is shown that petitioner by his conduct has intentionally prevented the INS from effecting his deportation, the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about.' … however, *Balogun* read an equitable tolling provision into Section 1231's predecessor statute; that statute lacked an express provision for extending the removal period.") (internal citations omitted).

[96] *Zadvydas*, 533 U.S. at 697.

[97] 8 U.S.C. § 1231(a)(1)(B).

[98] 8 U.S.C. § 1231(a)(1)(B).

triggered as Petitioner has been detained beyond the presumptive six-month period "reasonably necessary to bring about that alien's removal from the United States."[99]

Petitioner argues there is no significant likelihood of his removal in the reasonably foreseeable future based on recent memorandums issued by DHS and ICE. Therefore, Petitioner contends he should be released from ICE custody pending removal. Respondents counter that Petitioner is being detained for an extended period as Petitioner refuses to comply with the removal process as defined in § 1231(a)(1)(C). Petitioner contends that Respondents' argument fails not only since there was no bad-faith act of obstruction causing the failure of removal, but also considering Respondents' failure to follow the regulations implementing § 1231(a)(1)(C) procedurally defaulted their argument.

i.     Procedural Default

Petitioner claims Respondents cannot defend their continued detention of Petitioner under § 1231(a)(1)(C) as Respondents have procedurally defaulted this argument due to their failure to follow mandatory regulations.

§ 1231(a)(1)(C) is implemented by regulations codified in 8 C.F.R. § 241.4(g). Accordingly, when DHS determines that removal needs to be extended under § 1231(a)(1)(C), it is required to "[s]erve the alien with a Notice of Failure to Comply" that explains the relevant statutes and provides "an explanation of the necessary steps that the alien must take in order to comply with the statutory requirements."[100] However, "[t]he fact that [DHS] does not provide a Notice of Failure to Comply, within the 90–day removal period, to an alien who has failed to

---

[99] *Zadvydas*, 533 U.S. at 689.

[100] 8 C.F.R. § 241.4(g)(5)(ii).

comply with the requirements of section 241(a)(1)(C) of the Act, shall not have the effect of excusing the alien's conduct."[101]

Petitioner was served with a Notice of Failure to Comply on February 3, 2021. Although Petitioner was not served with the notice within the 90–day removal period, any alleged non-compliance by the Petitioner is not excused and may be considered by the court in its *Zadvydas* analysis.

### ii. Lack of Cooperation Under 8 U.S.C. § 1231(a)(1)(C)

Respondents contend Petitioner remains in extended detention under § 1231(a)(1)(C) as Petitioner has refused to cooperate with removal efforts.

This court has found no bright-line standard establishing how much and what type of evidence is necessary for the government to put forth to justify the continued detention of an alien under § 1231(a)(1)(C). As such, the court adopts the standard of proof used in other civil confinement contexts and holds that the government must demonstrate a lack of cooperation by clear and convincing evidence to justify extended detention.[102] Furthermore, the court implements a two-part test to establish a lack of cooperation: (1) the alleged non-compliance with removal efforts must be a product of the detainee's intentional or deliberate conduct; and (2) the non-compliance must deprive the government of documents necessary to effectuate a departure from the United States or otherwise prevent the alien's removal from the United States subject to an order of removal.[103] Finally, the court finds that the government is required to

---

[101] 8 C.F.R. § 241.4(g)(5)(iv).

[102] *See United States v. Comstock*, 560 U.S. 126, 130–31 (2010) (civil confinement for sex offenders under 18 U.S.C. § 4248); *Addington v. Texas*, 441 U.S. 418, 427–33 (1979) (civil commitment for individuals with mental illness).

[103] *See* 8 U.S.C. § 1231(a)(1)(C) ("[T]he alien may remain in detention during such extended period if the alien *fails* or *refuses* to make timely application in *good faith* for travel or other documents *necessary to the alien's*

renew requests for compliance with the removal process on a regular basis until the government can obtain such compliance.[104]

Although Petitioner had made initial efforts to comply with filling out travel documents and providing additional information, Petitioner has refused to take the additional steps necessary to complete his removal to Russia. According to the information provided by the Russian Federation, Russian law requires a travel document to be obtained in person and signed in the presence of a Russian Consulate. Moreover, the Russian Federation will only issue travel documents for those individuals who have their citizenship confirmed and voluntarily wish to return to Russia. Petitioner had an in-person meeting with Russian Consular Officials in December of 2020 but refused to sign travel documents in their presence. Due to his non-compliance, the government canceled Petitioner's scheduled ICE Air Operations charter flight to Russia. Petitioner thereafter refused to cooperate during a telephonic conversation between the Russian Consulate and Petitioner, and on multiple occasions refused to sign travel documents. More so, on May 11, 2021, the Russian Consulate requested an in-person interview with Petitioner. However, at present, it appears that Petitioner declines to be interviewed, refuses to sign travel documents in the Russian Consulate's presence, and has no interest in returning to Russia.

Petitioner's intentional actions are an impediment that deprives the government of documents necessary to effectuate his removal from the United States. Therefore, Petitioner has obstructed the removal process as defined in § 1231(a)(1)(C).

---

*departure* or conspires or acts to prevent the alien's removal subject to an order of removal.") (emphasis added*); see also Babanov v. Velasco*, No. 1:09-51, 2010 WL 11646530, at *3 (S.D. Tex. June 22, 2010).

[104] *See Babanov*, 2010 WL at *9 ("[S]ection 1231(a)(1)(C) may not be used to justify continued detention when ICE has not made reasonable efforts to remove that alien and has not presented the alien with a reasonable opportunity to complete the travel documents it claims are necessary to his departure.").

iii.    Petitioner's Burden

Petitioner is required to "provide[] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future[.]"[105]  Petitioner points to two memorandums to support his burden: one issued by then-Acting DHS Secretary David Pekoske on January 20, 2021 captioned "Review of and Interim Revision to Civil Immigration Enforcement and Removal Policies and Priorities"[106] and another issued by Acting ICE Director Tae Johnson on February 18, 2021 captioned "Interim Guidance: Civil Immigration Enforcement and Removal Priorities."[107]  The January 20 memo noted DHS's limited resources and inability to "respond to all immigration violations or even remove all persons unlawfully in the United States," and described the following civil enforcement priorities:

> 1. **National security.** Individuals who have engaged in or are suspected of terrorism or espionage, or whose apprehension, arrest and/or custody is otherwise necessary to protect the national security of the United States.
> 2. **Border security**. Individuals apprehended at the border or ports of entry while attempting to unlawfully enter the United States on or after November 1, 2020, or who were not physically present in the United States before November 1, 2020.
> 3. **Public safety.** Individuals incarcerated within federal, state, and local prisons and jails released on or after the issuance of this memorandum who have been convicted of an "aggravated felony," as that term is defined in section 101(a)(43) of the Immigration and Nationality Act at the time of conviction, and are determined to pose a threat to public safety.[108]

---

[105] *Zadvydas v. Davis*, 533 U.S. 678, 680 (2001).

[106] Memorandum from David Pekoske, Acting Secretary, Dep't of Homeland Sec., Review of & Interim Revision to Civil Immigration Enf't & Removal Polices & Priorities (Jan. 20, 2021) (DHS Memo), available at https://www.dhs.gov/sites/default/files/publications/21_0120_enforcement-memo_signed.pdf.

[107] Memorandum from Tae Johnson, Acting Director of ICE, on Civil Immigration Enforcement and Removal Priorities (Feb. 18, 2021) (ICE Memo), available at https://www.ice.gov/doclib/news/releases/2021/021821_civil-immigration-enforcement_interim-guidance.pdf.

[108] DHS Memo at 2.

The memo notes that these priorities will influence "not only the decision to issue, serve, file, or cancel a Notice to Appear, but also to a broad range of other discretionary enforcement decisions, including deciding: whom to stop, question, and arrest; whom to detain and release; whether to settle, dismiss, appeal, or join in a motion on a case; and whether to grant deferred action or parole."[109]  In addition, ICE issued the February 18, 2021 memo incorporating the same three interim priorities.  Petitioner argues he does not fall into any of the categories listed in the memos setting out priority for removal.  Therefore, his removal is not likely to occur in the foreseeable future.

However, at this time, the government is enjoined from enforcing and implementing the civil enforcement guidelines described in the DHS and ICE memos as they pertain to aliens who have already been ordered removed.[110]  Petitioner's removal was reinstated on November 21, 2019.  Therefore, this argument is moot.

As Petitioner has been found to have obstructed his removal under § 1231(a)(1)(C), the court holds that Petitioner fails to meet his burden of showing that there is no significant likelihood of his removal in the reasonably foreseeable future.  "[W]hen an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien" is unlikely to meet the initial burden under *Zadvydas*.[111]  Petitioner holds the "keys [to his freedom] in his pocket[.]"[112]  Once Petitioner properly signs Russian Travel Documents in the presence of a Russian Consulate, there is nothing outside of Petitioner's

---

[109] *Id.*

[110] *Texas v. United States*, No. 21-40618, 2021 WL 4188102, at *3, *7 (5th Cir. Sept. 15, 2021).

[111] *Lema v. INS*, 341 F.3d 853, 856 (9th Cir. 2003).

[112] *Pelich v. INS*, 329 F.3d 1057, 1060 (9th Cir. 2003).

control that prevents his immediate removal to Russia. Consequently, Petitioner's statutory and constitutional claims under *Zadvydas* are denied.

Lastly, to avoid the possibility of indefinite detention of Petitioner without an opportunity to comply with removal, the court holds that the government is required to renew its efforts to seek compliance from Petitioner in the removal process on a regular basis. To keep within the spirit of *Zadvydas*, the government must do so no less than every six months.

## C. Petitioner is Not in Custody in Violation of His Procedural Due Process Rights

Finally, Petitioner argues he is entitled to habeas relief on the ground that he has not been provided a neutral decision-maker to review his continued custody by ICE in violation of his right to procedural due process under the Fifth Amendment to the United States Constitution.

Traditionally, procedural due process protects an individual's right to be heard "at a meaningful time and in [a] meaningful manner."[113] Before a final deportation order is issued, bond proceedings are handled by an immigration judge, which may be appealed to the Board of Immigration Appeals.[114] Meanwhile, after the entry of a final order of removal, bond determinations are made by the Attorney General, acting through the District Director.[115] Petitioner contends "ICE does not make decisions concerning alien's custody status in a neutral and impartial manner[,]" and thus Petitioner was denied a meaningful opportunity to demonstrate that he should not remain detained pending removal.[116] The court construes Petitioner's claim to allege that his right to procedural due process entitles him to have continued-custody decisions

---

[113] *Bonito v. Bureau of Immigration and Customs Enf't*, 547 F. Supp. 2d 747, 755 (S.D. Tex. 2008) (internal citation omitted).

[114] 8 C.F.R. § 242.2(d).

[115] *See* 8 C.F.R. § 241.33(a) (2001); *Najjar v. Ashcroft*, 273 F.3d 1330, 1339 (11th Cir. 2001).

[116] Habeas Pet. at 8, 10 ¶¶ 39, 46.

made by an immigration judge or some other third-party rather than by ICE officials. However, this allegation is conclusory and insufficient to state a constitutional claim.[117] Petitioner puts forth no evidence to support the contention that ICE makes decisions in a non-neutral or partial manner.[118] As such, Petitioner's procedural due process claim is denied.

[117] *See Chhim v. Univ. of Texas at Austin*, 836 F.3d 467, 469 (5th Cir. 2016) ("We take the well-pleaded factual allegations in the complaint as true, but we do not credit conclusory allegations or allegations that merely restate the legal elements of a claim.").

[118] Other courts analyzing this issue have come to the same conclusion. *See Rawahna v. Attorney General of United States*, No. 1:18-CV-175, 2018 WL 3023438, at * 4 (S.D. Ohio June 18, 2018), report and recommendation adopted, No. 1:18-CV-175, 2018 WL 3348993 (S.D. Ohio July 9, 2018) ("Finally, petitioner has not demonstrated that he is entitled to habeas relief on the ground that he has not been provided a "neutral decision-maker" to review his continued custody in violation of his right to procedural due process. There is simply no evidence in the record even remotely suggesting there is any merit to his conclusory claim.") (internal citations omitted); *Moses v. Lynch*, No. 15-CV-4168-PAM-JJK, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016) ("Moses asserts the following … [']ICE does not make decisions concerning aliens' custody status in a neutral and impartial manner['] … The respondents in this case have offered evidence that ICE engaged in its required custody review process, and through that process determined that Moses should continue to remain in custody pending his removal. Moses has provided the Court with no basis to conclude that ICE failed to follow the applicable regulatory framework in reaching its decisions that he should be detained beyond the 90–day removal period. Absent some indication from Moses that ICE failed to comply with any of the specific requirements of that regulatory framework, we cannot conclude that Moses has been deprived of his Fifth Amendment right to procedural due process or is in custody in violation of the Constitution or laws of the United States.") (internal citations omitted).

IV.    **CONCLUSION**

Accordingly:

1.    It is **HEREBY ORDERED** that Respondents' motion for summary judgment included in "Respondents' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" [ECF No. 11] is **GRANTED**.  Respondents' motion to dismiss is **DENIED**.

2.    It is **FURTHER ORDERED** that Respondents **SHALL** maintain regularly scheduled efforts to obtain compliance from Petitioner with all removal requirements, including but not limited to arranging an in-person meeting with the Russian Consulate and Petitioner.  Such efforts **SHALL** be accomplished no less than every six months.

3.    It is **FURTHER ORDERED** that the "Verified Petition for a Writ of Habeas Corpus and Complaint for Declaratory Relief and Motion for Immediate Rule to Show Cause Hearing" [ECF No. 1] is **DISMISSED WITH PREJUDICE** pursuant to Federal Rule of Evidence 56.

4.    **FINALLY,** the Clerk of the Court is **INSTRUCTED TO CLOSE** this case.

**SIGNED AND ENTERED** this <u>**8th**</u> day of **October 2021**.


**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**